# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **JORDAN DENZELL,** **#M05432** **Plaintiff,** **v.** **TARA MCCOY,** **JANE DOE 1,** **JANE DOE 2, and** **JANE DOE 3,** **Defendants.** | **Case No. 25-cv-00185-SPM** |

# MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

Plaintiff Jordan Denzell, an inmate of the Illinois Department of Corrections who is currently incarcerated at Menard Correctional Center, brings this civil action pursuant to 42 U.S.C. § 1983 for violations of his constitutional rights. The Complaint is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, any portion of a Complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or requests money damages from a defendant who by law is immune from such relief must be dismissed. *See* 28 U.S.C. § 1915A(b).

1

## THE COMPLAINT[1]

Plaintiff alleges that on September 11, 2023, he fell off the top bunk bed while housed in the D-Wing of the Northern Receiving Center at Stateville Correctional Center. (Doc. 1, p. 5). He landed on his right elbow, which made "a cracking and crushing sound," causing it to swell and turn purple and black after a couple of hours. Although he cried out for help, no one checked on him until a couple of hours passed. Once Plaintiff spoke with a correctional officer, Plaintiff was told his medical treatment must wait until his transfer to Menard Correctional Center. (*Id*. at p. 5–6).

Plaintiff wrote and mailed sick call request slips, addressed to the Health Care Unit and Urgent Care Department at Stateville Correctional Center, every day from September 11 through September 15 of 2023—totaling at least four slips. (Doc. 1, p. 6). Nonetheless, Plaintiff was never examined. Despite his "excruciating pain," on September 16, Plaintiff filed a grievance about his injury. In his grievance on September 16, Plaintiff noted that something seemed out of place with his elbow, describing there was a lump the size of a bullet protruding from his elbow. (*Id*. at p. 17). The grievance was returned to Plaintiff on September 28, 2023, without

---

[1] Plaintiff appears to rely on statements made in the Complaint and attached exhibits in asserting his claims; the Court construes the allegations in all of these pleadings together. *See Otis v. Demarasse*, 886 F.3d 639, 644 (7th Cir. 2018) (The Supreme Court cautioned that any "document filed *pro se* is 'to be liberally construed,'" *pro se* litigants are granted "leniency . . . on procedural matters.") (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Lovelace v. Dall*, 820 F.2d 223, 228 (7th Cir. 1987)); *See also Williamson v. Curran*, 714 F.3d 432, 435–436 (7th Cir. 2013) ("when a plaintiff attaches to the complaint a document that qualifies as a written instrument, and her complaint references and relies upon that document in asserting her claim, the contents of that document become part of the complaint . . .") (referencing FED. R. CIV. P. 10(c)).

addressing his complaints, citing a transfer to Menard Correctional Center. (*Id*. at p. 15).

When Plaintiff transferred to Menard Correctional Center on September 20, 2023, his injuries were still not addressed, and his pain increased. (Doc. 1, p. 6). Plaintiff wrote an additional four sick call requests and sent them to Menard Correctional Center's Health Care Unit and Urgent Care Department. (*Id*. at p. 6–7). At this point Plaintiff reports the pain in his right elbow worsening and experiencing "sharp and shocking pains all the way up to [his] right shoulder." (*Id*. at p. 7). When those requests were ignored, Plaintiff wrote more sick call letters to Tara McCoy, the Menard Correctional Center Nursing Supervisor. When those letters were ignored, Plaintiff wrote four additional letters to McCoy. Each time Plaintiff wrote grievances with his right hand, his pain worsened. Those letters were ignored as well, leading Plaintiff to write another grievance on October 2, 2023. (*Id*.).

On November 15, 2023, Plaintiff submitted another grievance which was denied for being duplicative. (Doc. 1, p. 23). On November 16, 2023, Jane Doe 1, a medical personnel nurse, saw Plaintiff. (*Id*. at p. 7, 13). At this point, Plaintiff had not received any medical attention for 56 days. (*Id*. at p. 5, 7). Jane Doe 1 told Plaintiff that she only saw him because of his grievance and stated, "I will not be giving you any pain medication because you shouldn't have [written] that [expletive] grievance." (*Id*. at p. 7). Plaintiff was sent back to his cell with no pain medication. (*Id*.).

Similarly, on December 7, 2023, Jane Doe 2, another medical personnel nurse refused to provide Plaintiff with any pain medication because of Plaintiff's grievances and sick calls. (Doc. 1, p. 8, 13). Plaintiff continued to write more grievances and sick call requests regarding the ongoing pain in his right elbow. (*Id*. at p. 8).

Jane Doe 3, another medical personnel nurse, saw Plaintiff on January 27, 2024. (Doc. 1, p. 8). Nonetheless, Jane Doe 3 said Plaintiff could not receive pain medication and was "only being seen for the camera," and that "all [Plaintiff's] writing [expletive] off their boss." (*Id*. at p. 8, 13). Moreover, Jane Doe 3 expressed that Plaintiff does not need pain medication because he "should be use[d] to the pain by now." (*Id*. at p. 8). Plaintiff was again sent back to his cell in "excruciating pain with no pain medication." (*Id*.).

In a grievance submitted on February 7, 2024, Plaintiff grieved that the Tylenol he was taking had no effect on his pain. (Doc. 1, p. 26). On July 29, 2024, the Grievance Office responded to Plaintiff's October 2, 2023, grievance stating that the Healthcare Unit had been contacted and advised that Plaintiff was on the list to be seen and marked as a priority. (*Id*. at p. 19). A September 18, 2024, document indicates Plaintiff was scheduled to see a nurse practitioner on July 31, 2024, and receive an X-ray on August 6, 2024. (*Id*. at p. 29). It is unclear whether either of these appointments occurred. (*Id*.).

## DISCUSSION

Based on the allegations in the Complaint, the Court finds it convenient to designate the following Counts:

| | |
|---|---|
| **Count 1:** | Eighth Amendment claim against McCoy, Jane Doe 1, Jane Doe 2, and Jane Doe 3 for acting with deliberate indifference towards Plaintiff's elbow injury and associated pain sustained on September 11, 2023. |
| **Count 2:** | Eighth Amendment claim against McCoy, Jane Doe 1, Jane Doe 2, and Jane Doe 3 for failing to intervene and ensure that Plaintiff was provided treatment for his elbow injury and associated pain sustained on September 11, 2023. |
| **Count 3:** | First Amendment claim against McCoy, Jane Doe 1, Jane Doe 2, and Jane Doe 3 for retaliating against Plaintiff for filing grievances and sick calls. |

The parties and the Court will use these designations in all future pleadings and Orders, unless otherwise directed by a judicial officer of this Court. **Any other claim mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly*[2] pleading standard.**

### Count 1

At this stage, Plaintiff states a viable claim for deliberate indifference to a serious medical need against McCoy, Jane Doe 1, Jane Doe 2, and Jane Doe 3 for denying or delaying adequate medical care. (Doc 1, p. 9). *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005); *King v. Kramer*, 680 F.3d 1013, 1018 (7th Cir. 2012).

---

[2] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

**Count 2**

In addition to asserting that Defendants denied him medical care, Plaintiff alleges that Defendants failed to intervene and ensure that he received medical treatment and medication for his elbow injury and associated pain. (Doc. 1, p. 9).

Pleading a separate Eighth Amendment violation for failure to intervene is not necessarily redundant of an Eighth Amendment violation for denying or delaying medical care. "A claim for failure to provide medical care concerns the defendant's knowledge of, and disregard for, a serious medical risk; whereas a claim for failure to intervene concerns the defendant's failure to prevent another from committing a constitutional violation." *Awalt v. Marketti,* No. 11 C 61642, 2012 WL 1161500, at *11 (N.D. Ill. Apr. 9, 2012). *See also Winchester v. Marketti,* 2012 WL 2076375, at *6 (N.D. Ill. June 8, 2012) ("Failure to provide medical care stems from the defendant's own personal responsibility to provide care directly to persons. Failure to intervene stems from the defendant's duty to protect persons against the conduct of other. The two may overlap, but they are not commensurate."). In order to state a claim for failure to intervene, a plaintiff must plead that the defendant had a realistic opportunity to prevent another state employee or official from committing a constitutional violation but failed to do so. *See Windle v. City of Marion, Ind.,* 321 F. 3d 658, 663 (7th Cir. 2003).

Here, Plaintiff has sufficiently pled facts to support a failure to intervene claim against McCoy, whom he notified through grievances and letters that medical providers at Menard were not providing him medical treatment. But he has failed to

state a failure to intervene claim against Nurses Jane Doe 1, Jane Doe 2, and Jane Doe 3. He saw each nurse on a single occasion, and there is nothing in the Complaint from which the Court can infer that the nurses were aware of or had an opportunity to intervene in the conduct of other medical providers.

### Count 3

Count 3 will proceed against Jane Doe 1, Jane Doe 2, and Jane Doe 3 for refusing to treat Plaintiff's elbow injury and associated pain because he filed grievances and sick call slips. *Douglas v. Reeves*, 964 F.3d 643, 646 (7th Cir. 2020).

The claim against McCoy, however, will be dismissed. To succeed on a First Amendment retaliation claim, Plaintiff must show "that (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was 'at least a motivating factor' in the Defendants' decision to take the retaliatory action." *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009) (quoting *Massey v. Johnson*, 547 F.3d 711, 716 (7th Cir. 2006)). While Plaintiff does allege that the Jane Does indicated that Plaintiff's constant complaining about the lack of medical care had angered their boss, he does not allege a specific retaliatory action taken by McCoy. (Doc. 1, p. 8).

### IDENTIFICATION OF UNKNOWN DEFENDANT

Plaintiff will be allowed to proceed with Counts 1 and 3 against Jane Doe 1, Jane Doe 2, and Jane Doe 3. The defendants must, however, be identified with

particularity before service of the Complaint can be made. Plaintiff will have the opportunity to engage in limited discovery to ascertain their identities. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d, 832 (7th Cir. 2009). The Warden of the Menard Correctional Center, Anthony Wills, will be added as a defendant in this action, in his official capacity only, and shall be responsible for responding to discovery aimed at identifying these unknown defendants. Guidelines for discovery will be set at a later date. Once the names of the unknown defendants are discovered, Plaintiff must file a motion to substitute the newly identified defendants in place of the generic designation in the case caption and throughout the Complaint.

### MOTION FOR RECRUITMENT OF COUNSEL

Plaintiff has filed a motion asking the Court to recruit counsel on his behalf. (Doc. 3). Pursuant to 28 U.S.C. § 1915(e)(1), the Court "may request an attorney to represent any person unable to afford counsel." When faced with a motion for recruitment of counsel the Court applies a two part test: "(1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself?" *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007).

In an effort to recruit counsel, Plaintiff provides the name five firms that he has contacted via written correspondence about representing him in this case, and he states that he has not received any responses to his letters. (Doc. 3). The Court cannot

8

determine that Plaintiff has made sufficient efforts to find a lawyer on his own, based only on a list of law firms. Thus, he has failed to meet his threshold burden of demonstrating attempts to recruit counsel on his own, prior to seeking assistance from the Court, and the motion is **DENIED**. Should Plaintiff choose to move for recruitment of counsel at a later date, the Court directs Plaintiff to include additional information about his efforts, such as when he contacted each firm, and also include supporting documentation, such as the letters from the attorneys who declined representation or copies of his payment voucher for postage.

### DISPOSITION

For the reasons stated above, the Complaint survives preliminary review pursuant to Section 1915A. **COUNT 1** will proceed against McCoy, Jane Doe 1, Jane Doe 2, and Jane Doe 3. **COUNT 2** will proceed against McCoy and is **DISMISSED without prejudice against** Jane Doe 1, Jane Doe 2, and Jane Doe 3. **COUNT 3** will proceed against Jane Doe 1, Jane Doe 2, and Jane Doe 3 and is **DISMISSED without prejudice against** McCoy. The Clerk of Court is **DIRECTED** to add **Anthony Wills**, the Warden of Menard Correctional Center, as a defendant in his official capacity only for the purpose of identifying the Jane Doe defendants.

Because Plaintiff's claims involve his medical care, the Clerk of Court is **DIRECTED** to **ENTER** the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

The Clerk of Court shall prepare for McCoy, the Jane Does (once identified), and Wills (official capacity only): (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is directed to mail these forms, a copy of the Complaint, and this Memorandum and Order to the Defendants' places of employment. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require that defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant can no longer be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Service shall not be made on the unknown defendants, Jane Doe 1, Jane Doe 2, and Jane Doe 3 until such time as Plaintiff has identified them by name in a properly filed motion for substitution. Plaintiff is **ADVISED** that it is his responsibility to provide the Court with the name and service address for the individuals.

With the exception of Defendant Wills, Defendants are **ORDERED** to timely

10

file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C § 1997e(g). **Pursuant to Administrative Order No. 244, the defendants only need to respond to the issues stated in this Merit Review Order**. **Wills need not answer or otherwise respond to the Complaint as he is only in this case for the purpose of identifying the Jane Doe defendants. He must only enter his appearance and will receive further instructions on discovery at a later date.**

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, he will be required to pay the full amount of the costs, even though his application to proceed *in forma pauperis* was granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this Order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

     **IT IS SO ORDERED.**

     **DATED:  June 23, 2025**

                            *s/Stephen P. McGlynn*
                            **STEPHEN P. MCGLYNN**
                            **United States District Judge**

**NOTICE TO PLAINTIFF**

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take **90 days** or more. When all the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time, unless otherwise directed by the Court.